# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2023

Lyle W. Cayce
Clerk

No. 22-20050

Lori Washington, ex rel. J.W.; J.W.,

*Plaintiffs—Appellants*,

*versus*

Katy Independent School District,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-204

Before Jones, Smith, and Graves, *Circuit Judges*.
Per Curiam:[*]

Lori Washington is the mother of J.W., a former student of Katy Independent School District ("the District") who suffers from intellectual disability and emotional disturbance. Washington brought claims on behalf of J.W. against the District under the Individuals with Disabilities Education

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-20050

Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* She appeals an adverse determination by both a state hearing officer and the district court. We AFFIRM.

## I. BACKGROUND

The district court opinion below thoroughly details the facts underlying this case. *See Washington v. Katy Indep. Sch. Dist.*, 2022 WL 61160, *1–4 (S.D. Tex. Jan. 6, 2022). In short, J.W. transferred to the District in August 2016, at which time the District convened an admission, review, and dismissal ("ARD") committee to facilitate the creation and implementation of an individualized educational plan ("IEP") and behavioral improvement plan ("BIP") for J.W.'s junior year. Washington concedes the plan "worked well" and J.W.'s "grades were excellent."

In November 2016, J.W. was repeatedly tased by a school resource officer during a confrontation with District staff. Washington subsequently withheld J.W. from school for almost the entire spring 2017 term despite the District's repeated attempts to provide support and accommodations. An ARD committee was convened in May 2017 to address J.W.'s absenteeism and adjust his individualized educational plan. J.W. attended the first session of extended school year ("ESY") services in summer 2017. But he again struggled with absenteeism early in the fall 2017 term, this time caused by displacement from Hurricane Harvey. J.W.'s attendance improved in November and December, and he received mostly As and Bs during the 2017–18 school year. He ultimately graduated in May 2018.

In December 2017, Washington requested a special education due process hearing with the Texas Education Agency pursuant to the IDEA. A hearing officer determined the District did not violate J.W.'s procedural rights and provided him a free appropriate public education ("FAPE") as required by the IDEA. The district court affirmed that determination, granted summary judgment for the District, denied summary judgment for

No. 22-20050

Washington, and dismissed the case with prejudice. Washington appeals that judgment.

## II. STANDARD OF REVIEW

This court reviews de novo, as a mixed question of law and fact, a district court's determination that a school district furnished a FAPE under the IDEA. *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 395 (5th Cir. 2012) (quotation marks omitted). "The district court's findings of 'underlying fact' are reviewed for clear error." *Id.* (citation omitted).

## III. DISCUSSION

"To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 399, 137 S. Ct. 988, 999 (2017). "An IEP need not be the best possible one, nor does it entitle a disabled child to a program that maximizes the child's potential." *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 396 (5th Cir. 2012). "Nevertheless, a school district must provide the student with a meaningful educational benefit." *Id.*

To that end, the court assesses whether a student's IEP was "reasonably calculated to enable the student to receive educational benefits." *Id.* Four factors articulated in *Cypress-Fairbanks Independent School District v. Michael F.* guide this analysis: whether "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." 118 F.3d 245, 253 (5th Cir. 1997).

No. 22-20050

Washington challenges the district court's holding that the first, third, and fourth *Michael F.* factors favor the District. Washington also contests multiple factual determinations made by the district court. Those challenges are resolved below under the relevant *Michael F.* factors.[1]

*As to the first* Michael F. *factor*, Washington argues J.W.'s May 2017 IEP was not sufficiently individualized because it failed to address his absenteeism.[2] The record demonstrates otherwise. The May 2017 ARD committee discussed attendance expectations and J.W.'s expected return date. It adjusted J.W.'s BIP in an explicit effort to address the underlying causes of J.W.'s attendance problems, offered ESY services so that J.W. could recoup credits he lost during the spring 2017 term, and recommended a functional behavioral assessment or counseling evaluation to determine what further support should be provided. Washington agreed that the

---

[1] As a preliminary matter, Washington generally argues that the district court erred in accepting the testimony of District staff without "objectively verifiable evidence" in support. Testimony is not disfavored evidence, even when uncorroborated. It instead is "the province of the district court to weigh" such evidence. *R.S. v. Highland Park Indep. Sch. Dist.*, 951 F.3d 319, 337 (5th Cir. 2020) (per curiam). For this reason, we afford great deference to credibility findings made by the hearing officer and district court in IDEA proceedings. *Lisa M. v. Leander Indep. Sch. Dist.*, 924 F.3d 205, 218 (5th Cir. 2019). Here, both the hearing officer and the district court found credible the testimony of District officials. Washington offers no evidence apart from her own uncorroborated testimony to rebut these determinations. We thus decline Washington's invitation to substitute our credibility assessments for those of the hearing officer and district court.

[2] Washington also claims the District violated federal, state, and district policies to counteract J.W.'s absenteeism following the tasing incident. To the contrary, the district court records show numerous district officials were in contact with Washington often to explain, diagnose, and ameliorate the problem until Washington finally cooperated in attending the May 2017 ARD meeting. Nor did the District fail to alleviate J.W.'s "school phobia." There is no evidence in the record that J.W. was ever diagnosed with such a mental or psychological disability.

services offered by the revised IEP were adequate. These findings reveal J.W.'s May 2017 IEP was appropriately individualized.

*As to the third* Michael F. *factor*, Washington contends the District failed to collaborate with her in that it refused to discuss what events occurred prior to the tasing incident and predetermined the outcome of the May 2017 ARD meeting. To the contrary, the District did not refuse to discuss with Washington what led up to the tasing incident. For instance, Assistant Principal Majewski spoke with Washington about the incident on the day it occurred. Majewski attempted to discuss the incident with Washington again in January 2017, but Washington ended the phone call before Majewski could provide a full explanation. Washington met with Principal Edwards, but she did not ask about what led up to the incident. In fact, only during the May 2017 ARD meeting did staff decline to discuss the incident, as they insisted that the ARD committee instead focus on remedying the effects of the incident. They also proposed that Washington schedule a different time to speak with staff about the incident. Moreover, no evidence suggests the outcome of the May 2017 ARD meeting was predetermined. Washington attended the meeting with counsel. Some of her suggestions were incorporated into J.W.'s BIP. And she agreed with the IEP proposed at that meeting.

Washington also argues the District failed to implement J.W.'s IEPs. She contends the September 2016 IEP was not implemented because the District failed to address J.W.'s absenteeism in a timely manner. "[T]he reasonableness of a delay is not defined by its length but by the steps taken by the district during the relevant period." *Spring Branch Indep. Sch. Dist. v. O.W.*, 961 F.3d 781, 793 (5th Cir. 2020). Here, the District made multiple attempts, both formal and informal, to transition J.W. back to school and provide him necessary services. The District cannot be faulted for delays caused by Washington's lack of responsiveness and her refusal to return

necessary paperwork.[3] *See Renee J. v. Houston Indep. Sch. Dist.*, 913 F.3d 523, 532 (5th Cir. 2019).

Washington asserts the May 2017 IEP was not implemented because J.W. missed a substantial portion of the term due to Hurricane Harvey. "[A] party challenging the implementation of an IEP must show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP." *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). Washington has not pointed to a single provision from the May 2017 IEP that the District was unwilling to implement had J.W. attended school. Simply put, a parent cannot agree that the services her child is receiving are sufficient, prevent the school from administering those services by withholding the child, hinder the school's ability to provide additional services by failing to file necessary paperwork, then later sue on the basis that the school did not do enough. *See Renee J.*, 913 F.3d at 531–32.

*As to the fourth* Michael F. *factor*, Washington first contests the district court's finding that J.W. received academic and non-academic benefits. "Whether the student obtained educational benefits from the school's special education services is a finding of underlying fact." *Hovem*, 690 F.3d

---

[3] The district court found Washington declined to sign consent forms that would have allowed the District to speak with J.W.'s outside health care providers. Washington proffers circumstantial evidence as to why this finding was in error. This evidence, however, does not demonstrate the district court clearly erred. Indeed, ample evidence supports the district court's finding.

The district court also found Washington declined ESY transportation and did not return homebound services paperwork. Washington does not contest the first finding. She instead merely quibbles with the "manner in which the [district court] characterized" the fact. As to the second determination, Washington provides no evidence as to why this finding was in error.

No. 22-20050

at 395.  J.W. attended some school days in January 2017.  On the days he attended, he was able to utilize the Positive Approach to Student Success Program ("PASS") room and meet with the licensed specialist in school psychology ("LSSP").  He participated in the first term of ESY, where he was able to make up an English credit and learn to better interact with others. He attended class and participated in a work-based learning program, sporadically in August, September, and October, but more consistently in November and December.  He also met with the LSSP to learn how to manage his anger and misperception of others.  J.W. received passing grades during the 2017/2018 school year[4] and readjusted to the school setting without significant behavioral concerns.  His teachers testified that J.W. demonstrated an ability to learn, follow directions, and engage with others; they additionally believed he would be able to hold a job upon graduation. And J.W. ultimately accrued enough credits to graduate.[5]  In sum, the district court did not clearly err in finding J.W. received academic and nonacademic benefits.

Washington also contends the district court failed to apply *Hovem*'s "holistic approach" when evaluating the academic and non-academic benefits conferred by the IEPs.  To the contrary, the district court reviewed J.W.'s overall academic record as opposed to focusing "on disability remediation."  *Hovem*, 690 F.3d at 398.  It thus avoided the precise error *Hovem* cautioned against.

---

[4] Washington also contends J.W. could not have actually received the grades he putatively earned because he "barely went to school in the Fall of 2017."  To the contrary, ample evidence supports the finding that J.W. earned the grades he received.

[5] Washington's argument that the District forced J.W. into a sham graduation rings hollow considering she agreed to reduce the credits necessary for J.W. to graduate.  The District also convened an ARD committee after J.W.'s graduation to implement a program through which he could continue receiving services.

No. 22-20050

In sum, the *Michael F.* factors weigh in favor of the District, thus supporting the conclusion that J.W.'s IEPs were adequate to confer a FAPE.[6]

The district court's judgment is AFFIRMED.

---

[6] To the extent Washington raises procedural violations, those contentions fall flat. Washington does not show how any alleged violation "(i) impeded [J.W.'s] right to a FAPE; (ii) significantly impeded [Washington's] opportunity to participate in the decision-making process regarding the provision of a FAPE to [J.W.]; or (iii) caused a deprivation of educational benefit." 34 C.F.R. § 300.513(a).